IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CORY EUGENE WINDLAND § <br> § <br> Petitioner, § <br> § <br> VS. § <br> § <br> RICK THALER, Director § <br> Texas Department of Criminal Justice, § <br> Correctional Institutions Division § <br> § <br> Respondent. § | NO. 3-05-CV-2438-K |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Corey Eugene Windland, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A Dallas County grand jury charged petitioner in separate indictments with the capital murders of Emily Meyer and Felipe Villanueva. The indictments alleged that petitioner intentionally caused the death of the victims while in the course of committing or attempting to commit the offense of robbery. After a jury found petitioner guilty of both capital murders, the trial court assessed punishment at life imprisonment in each case. Petitioner challenged his convictions on direct appeal and state collateral review. The state appeals court affirmed in an unpublished opinion. *Windland v. State*, Nos. 05-03-01519-CR & 05-03-01520-CR, 2004 WL 1166494 (Tex. App.-- Dallas, May 26, 2004, no pet.). The Texas Court of Criminal Appeals denied post-conviction relief

without written order. *Ex parte Windland*, WR-61,813-02 (Tex. Crim. App. Oct. 19, 2005). Petitioner then filed this action in federal district court.[1]

II.

Petitioner raises three broad issues in six grounds for relief: (1) the evidence was legally and factually insufficient to support his convictions; (2) the trial court improperly admitted certain evidence; and (3) he received ineffective assistance of counsel.

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct.

---

[1] This court originally dismissed petitioner's federal writ because it was filed one day after the expiration of the AEDPA statute of limitations. *Windland v. Dretke*, No. 3-05-CV-2438-K, 2006 WL 1391435 (N.D. Tex. May 18, 2006). In making that determination, the court did not include the date petitioner filed his state writ in calculating the AEDPA tolling period. *Id.*, 2006 WL 1391435 at *2, *citing* 28 U.S.C. § 2244(d)(2). The Fifth Circuit reversed, holding that a state petition for habeas relief is "pending" for tolling purposes on the day it is filed through and including the day it is resolved. *Windland v. Quarterman*, 578 F.3d 314, 317 (5th Cir. 2009).

at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 559 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *citing Williams*, 120 S.Ct. at 1521-22 (O'Connor, J., concurring). Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

In two grounds for relief, petitioner contends that the evidence was legally and factually insufficient to support his convictions for capital murder because the state failed to prove that he intended to rob the victims prior to or at the time of the murders. Respondent counters that these claims are procedurally barred from federal habeas review.

1.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *Sawyer v. Whitley*, 505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *Harris v. Reed*, 489 U.S. 255, 261, 109 S.Ct 1038, 1042, 103 L.Ed.2d 308 (1989); *Smith v. Collins*, 977 F.2d 951, 955 (5th Cir. 1992), *cert. denied*, 114 S.Ct. 97 (1993). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v. Lovorn*, 457 U.S. 255, 262-63, 102

S.Ct. 2421, 2426, 72 L.Ed.2d 824 (1982); *Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999). A petitioner can overcome a procedural default only by showing: (1) cause for the default and actual prejudice; or (2) that the application of the state procedural bar would result in a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000).

2.

Although petitioner challenged both the legal and factual sufficiency of the evidence on direct appeal, he did not file a petition for discretionary review. Instead, these claims were presented to the Texas Court of Criminal Appeals for the first time in an application for state post-conviction relief. Because Texas law does not allow a prisoner to collaterally attack the sufficiency of the evidence in a writ of habeas corpus, *see Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App.), *cert. denied*, 102 S.Ct. 481 (1981),[2] the claims were denied without written order. *Ex parte Windland*, WR-61,813-02 at cover. Such a disposition means that petitioner's legal and factual sufficiency claims were rejected on state procedural grounds. *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) ("[W]here an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable."); *see also Salazar v. Dretke*, 419 F.3d 384, 398-99 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1467 (2006). Petitioner is therefore procedurally barred from challenging the

---

[2] Texas law permits a defendant to raise a "no evidence" claim for the first time on collateral review where the conviction is totally devoid of any evidentiary support. *See Ex parte Barfield*, 697 S.W.2d 420, 421 (Tex. Crim. App. 1985); *Ex parte Coleman*, 599 S.W.2d 305, 307 (Tex. Crim. App. 1978). However, where a defendant merely challenges the sufficiency of the evidence to support a conviction, such a claim must be raised on direct appeal. *See Ex parte Williams*, 703 S.W.2d 674, 679-80 (Tex. Crim. App. 1986). The crux of petitioner's claim is that he robbed the victims after the murders "as a mere afterthought[.]" (*See* Pet. Mem. at 4). Such an argument implicates the sufficiency of the evidence and cannot be litigated under the guise of a "no evidence" claim. *See Roberson v. Quarterman*, No. 3-07-CV-0339-B, 2007 WL 4373267 at *2 n.3 (N.D. Tex. Dec. 13, 2007) (citing cases), *COA denied*, No. 08-10760 (5th Cir. May 11, 2009).

sufficiency of the evidence on federal habeas review. *See Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *Roberson v. Quarterman*, No. 3-07-CV-0339-B, 2007 WL 4373267 at *2 (N.D. Tex. Dec. 13, 2007), *COA denied*, No. 08-10760 (5th Cir. May 11, 2009).

3.

Even if petitioner's sufficiency claims were not procedurally barred, he is not entitled to relief. A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 102 (1992). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 99 S.Ct. at 2789; *Gibson*, 947 F.2d at 781. At trial, there was ample evidence that petitioner and his brother, Jimmy Windland, murdered Emily Meyer and Felipe Villanueva while in the course of committing robbery. The murders occurred after Emily and Jimmy got into a fight about "getting the drugs, having the money paid up front." As the state appeals court noted:

> [T]he evidence shows Jimmy went through Felipe's pockets after he shot Felipe but while Felipe was still alive. Having found a switchblade in Felipe's pockets, Jimmy stabbed Felipe who continued to gasp for air for another ten minutes. During those ten minutes, Jimmy and appellant went through Emily's and Felipe's personal belongings. Jimmy counted the money and went through the victims' belongings while Felipe lay dying. Viewed in the light most favorable to the judgment, we conclude a rational jury could infer, from these facts, that appellant intentionally committed Emily's and Felipe's murders in the course of committing or attempting to commit robbery.

*Windland*, 2004 WL 1166494 at *3. Petitioner has failed to show that this decision was based on an unreasonable determination of the facts in light of the evidence presented at trial.

Nor can petitioner challenge the factual sufficiency of the evidence. Under Texas law, intermediate appellate courts have the authority to review fact questions in criminal cases. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). This "factual sufficiency" review of the evidence is broader than a "legal sufficiency" challenge under *Jackson*. *Id*. Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Pruitt v. Cockrell*, No. 3-00-CV-1713-H, 2001 WL 1115339 at *13 (N.D. Tex. Sept. 14, 2001), *quoting Clewis*, 922 S.W.2d at 129. The power of state appellate courts to review the factual sufficiency of the evidence derives from Texas statutory and constitutional authority. *Id.* at *14, *citing Clewis*, 922 S.W.2d at 129-30, *and Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), *cert. denied*, 115 S.Ct. 2617 (1995). There is no corresponding right of review under the United States Constitution. *Id.*; *see also Daisy v. Dretke*, No. 3-04-CV-2015-D, 2004 WL 3167743 at *2 (N.D. Tex. Dec. 21, 2004) (citing cases), *COA denied*, No. 05-10052 (5th Cir. Nov. 9, 2005).

C.

Next, petitioner complains that the trial court improperly admitted into evidence a poem written by Jimmy, gruesome photographs of Felipe's charred body, and the hearsay testimony of Leanna Parker. Evidentiary rulings are cognizable on federal habeas review only if the petitioner can demonstrate that the erroneous admission of evidence violated his constitutional rights. *See Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 1874 (2008). "[T]he admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is 'so unduly prejudicial that it renders the trial fundamentally unfair,'" *Id., quoting Payne*

*v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991). Even the erroneous admission of prejudicial evidence does not justify habeas relief "unless the evidence played a 'crucial, critical, and highly significant' role in the [verdict]." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999), *cert. denied*, 120 S.Ct. 1437 (2000), *quoting Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1768 (1999).

1.

During his direct examination of Dallas police detective Jesus Trevino, the prosecutor introduced into evidence a stack of paperwork seized from petitioner's residence pursuant to a search warrant. (*See* SF-V at 10-11). One of those documents was a poem allegedly written to petitioner by his brother, Jimmy, about the murders. (*Id.* at 12 & St. Exh. 30). Defense counsel objected that the document was hearsay and not properly authenticated, but the trial court overruled the objection and admitted the poem into evidence. (*Id.* at 12). The prosecutor then asked Trevino to read two passages from the poem to the jury. The first excerpt read:

> I hope it worked locc [sic] remember when the pistol smoke, cleared out the room I dumped them bodies for you kenfolk [sic].

(*Id.* at 13 & St. Exh. 30). The second passage read:

> But someday all you'll have is what you threw away, but Blu won't be there for you cuzz, on that f------ day.
>
> You dissed us all for some pussy that's all that I know, you even f----- yourself not showing back up for parole.
>
> It's all good C, so this is how it's gonna be, but remember when you wear my clothes and watch my T.V.
>
> And pet my dog, and f--- my wife, and when you tie my shoes, you f---- me good, I did[n]'t do a f------ thing to you.
>
> Hope it was worth it fool, and f--- the s--- that we went through, my brothers dead to me, I'm gonna f----- miss you fool!

(*Id.* at 14 & St. Exh. 30). On direct appeal, the state court held that the poem was hearsay and should not have been admitted into evidence. *Windland*, 2004 WL 1166494 at *4. However, the appeals court determined that petitioner was not harmed by the admission of the poem because "[t]he State provided ample evidence, including eyewitness testimony, establishing that appellant and his brother shot and stabbed Emily and Felipe, then dumped their bodies." *Id.*

A review of the state court record supports that determination. Before the poem was admitted into evidence, the jury heard from Leanna Parker, a neighbor and confidant of petitioner, who testified that petitioner confessed to her about his role in the murders of Emily and Felipe. According to Parker, petitioner said "there were problems with the boy and the girl," and that he and Jimmy "were getting ready to jack them." (SF-IV at 214). When asked what petitioner told her about the murders, Parker explained:

> It's my understanding that the boy was standing in the entry to the kit--the kitchen, and when--when the--when the incident went down and the--and the jack move came to take place, which the altercation, I understand that, from what he told me, [Felipe] had a gun in his back and [Jimmy] took the gun. Shot [Felipe] with it. Turned and shot Emily. Turned and shot [Felipe] again because he wasn't--he wouldn't dying. He was breathing. So there was a lot of blood. He explained to me there was a lot of blood.
>
> I know he took the gun from [Felipe]. And at that time, is when they were--that's what I can remember right now. I know what I wrote and I know what I said a month ago but--
>
> Q. Well, do you remember telling the police or relating to the police what [petitioner] told you about why they were going to jack this couple?
>
> A. Because when they came back--when they had been there on a day or two earlier, they were having an issue with some--some type of gangster re--retaliation or--or boy things.
>
> * * * *

> Q. Do you remember any other details that [petitioner] told you about the double murder that happened next door to you?
>
> A. Yeah.
>
> Q. What was that, please?
>
> A. I remember that he said there was a lot of blood and it was quite a bit of mess than--than what he had anticipated. It was overwhelming the--the--the way that the blood was a mess.
>
> I understand that the boy was making a clicking noise and he--he wouldn't die. They--apparently [Jimmy] was the one who put the--the plastic bag over his head. And that the more times that the--that he would suff--he eventually would die a little bit more. You know, he wasn't making the clicking noise as much as the plastic bag was going in and out of his mouth.

(*Id.* at 214-17). Parker also told the jury that petitioner took her through the apartment where the murders occurred, explained how he helped clean up the crime scene, and described how he and his brother burned the bodies of the murder victims by setting a car on fire. (*Id.* at 219-25). Another witness, Corine DeJong, was in the apartment at the time of the murders. DeJong described petitioner's role in the offense, including dragging Emily into the kitchen area and shooting a gun in her direction. (*See id.* at 103-09). In view of this evidence, which was not objected to by defense counsel, it is difficult to envision how petitioner was harmed by the admission of the poem. *See United States v. Hall*, 500 F.3d 439, 444 (5th Cir. 2007) (erroneous admission of cumulative evidence is harmless error).

2.

Petitioner also challenges the admission into evidence of a black and white photocopy of a photograph depicting Felipe's charred body. "The admissibility of photographs of homicide victims is a matter of Texas law." *Rodriguez v. Quarterman*, 535 F.Supp.2d 820, 844 (S.D. Tex. 2007), *aff'd*, 327 Fed.Appx. 466, 2009 WL 1180898 (5th Cir. May 4, 2009), *cert. denied*, 2009 WL

3348026 (U.S. Oct. 20, 2009). In order to obtain federal habeas relief, petitioner must show that the admission of this evidence was so unduly prejudicial that it "renders the entire trial fundamentally unfair." *Id.*, *citing Trussell v. Estelle*, 699 F.2d 256, 259 (5th Cir.), *cert. denied*, 104 S.Ct. 168 (1983); *see also Payne*, 111 S.Ct. at 2608. Petitioner cannot meet this heavy burden. In rejecting this claim on direct appeal, the state court wrote:

> The record before this Court contains a black and white photostatic copy of the photograph. The photo depicts Felipe's body after it had been removed from the car. Detective Wojcik testified Felipe was face down on the floorboard. Thus, this is the only photograph of the front part of his body and, as such, is the only visual evidence illustrating the complete condition of the body when it was found. It also aids in depicting the nature and extent of Felipe's wounds. After reviewing this and the other photographs admitted at trial, we question whether this photograph is any more "gruesome" than the others admitted at trial. Nevertheless, we conclude it is not so gruesome as to be unfairly prejudicial.

*Windland*, 2004 WL 1166494 at *5. The adjudication of this issue by the state appeals court was both legally and factually reasonable. *See, e.g. Jones v. Butler*, 864 F.2d 348, 368 (5th Cir. 1988), *cert. denied*, 109 S.Ct. 2090 (1989) (photographs of female murder victim, including photo of cut on gums with lips pulled back, photo of buttocks with blood trickling down from genital area, and photo of victim's legs spread apart to show vagina, were not so inflammatory as to plainly outweigh evidentiary value).

3.

Petitioner's challenge to the hearsay testimony of Leanna Parker is procedurally barred. Under Texas law, a party must make a timely and proper objection to preserve a claim for appellate review. *See Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App.), *cert. denied*, 112 S.Ct. 202 (1991). The objection must state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the

specific grounds were apparent from the context[.]" TEX. R. APP. P. 33.1(a)(1)(A). This "contemporaneous objection" rule constitutes an adequate state procedural bar for purposes of federal habeas review. *See Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 1175 (2002).

Defense counsel did not object to Parker's testimony on hearsay grounds. As a result, the state habeas court refused to consider this claim on the merits. *Windland*, WR-61,813-02, Tr. at 64, ¶ 3. Petitioner is therefore barred from litigating this issue in federal court. *See Styron*, 262 F.3d at 453-54.

### D.

Finally, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) failed to call Jimmy Windland and Lisa Pam as defense witnesses; (2) did not request a jury instruction on self-defense against multiple assailants; (3) never asked the court reporter to make a record of bench conferences; and (4) conceded guilt during closing argument. Only the last claim was specifically raised on direct appeal or state collateral review and is properly exhausted. *See, e.g. Thomas v. Collins*, 919 F.2d 333, 334-35 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2862 (1991) (unrelated claims of ineffective assistance of counsel raised in state writ does not satisfy exhaustion requirement). While a federal court has limited discretion to stay a habeas petition and hold it in abeyance so a prisoner can return to state court to exhaust his previously unexhausted claims, *see Rhines v. Weber*, 544 U.S. 269, 275, 125 S.Ct. 1528, 1533-34, 161 L.Ed.2d 440 (2005), Texas law prohibits a prisoner from filing a second or successive habeas petition if the grounds stated therein could have been, but were not, raised in a prior state writ. *See* TEX. CODE CRIM. PROC.

ANN. art. 11.07, § 4 (Vernon 2005).³ This procedural bar also applies to unexhausted claims if the state court would likely dismiss a successive habeas petition under article 11.07, § 4. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991) (procedural default occurs when prisoner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"). The court finds that a Texas court, if presented with a successive writ filed by petitioner, would likely find it barred. Consequently, federal habeas relief is not proper with respect to petitioner's unexhausted claims. *Coleman*, 111 S.Ct. at 2557 n.1; *see also Gruenfelder v. Quarterman*, No. 3-07-CV-0646-M, 2007 WL 3071015 at *3 (N.D. Tex. Oct. 19, 2007), *COA denied*, No. 07-11156 (5th Cir. Aug. 19, 2008).

Although petitioner is not barred from challenging his attorney's closing argument, this claim lacks merit. In an attempt to convince the jury to convict petitioner of the lesser included offense of murder, counsel argued:

> I'm going to ask you, ladies and gentlemen, to look closely at what has come forward in this case to you from this witness stand (indicating). And I'm going to ask you to find this defendant not guilty of capital

---

³ The statute provides, in relevant part, that:

> If a subsequent application for writ of habeas corpus is filed after final disposition of an initial application challenging the same conviction, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> (1)   the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or
>
> (2)   by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).

> murder because there is no evidence of capital murder. Zero. None. None.
>
> Murder? That's up to you because obviously he was there. Obviously he knows something. Obviously you can figure out from the evidence, if you want to, what he did.

(SF-VI at 25). Under the deferential standard by which counsel's actions at trial are judged, petitioner has not shown that the decision by his attorney to concede guilt to a lesser included offense fell outside the wide range of reasonable professional assistance. To the contrary, in view of the overwhelming evidence of petitioner's guilt, counsel's argument was sound trial strategy. *See Gordon v. Cockrell*, 55 Fed.Appx. 717, 2002 WL 31933286 at *1 (5th Cir. Dec. 27, 2002) (counsel not ineffective for arguing that defendant should be found guilty only of lesser included offense of attempted aggravated robbery instead of charged offense of aggravated robbery). This ground for relief should be overruled.

## **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 3, 2009.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE